```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
CITY NATIONAL BANK OF FLORIDA, a     :
national banking corporation,        :
                                     :
            Plaintiff,               :
                                     :
      -v-                            :
                                     :
MORGAN STANLEY DW, INC.,             :
                                     :    05 CIV. 2739 (DLC)
            Defendant/Third-Party    :    OPINION AND ORDER
            Plaintiff,               :
                                     :
      -v-                            :
                                     :
CASE INVESTMENTS, LLC and DAVID S.   :
SOLOMON,                             :
                                     :
            Third-Party Defendants.  :
                                     :
-------------------------------------X
```

Appearances:

For Plaintiff:
Mark M. Rottenberg
David R. Quesnel
Rottenberg Lipman Rich, P.C.
369 Lexington Avenue, 14th Floor
New York, NY 10017

For Defendant / Third-Party Plaintiff:
Lawrence E. Fenster
Matthew C. Plant
Bressler, Amery & Ross
A Professional Corporation
17 State Street -- 34th Floor
New York, NY 10004

DENISE COTE, District Judge:

  Plaintiff City National Bank of Florida ("City National") brings this breach of contract action against Morgan Stanley DW, Inc. ("Morgan Stanley") to recover for a shortfall in the repayment of a loan made to third-party defendant Case

Investments LLC ("Case"). The loan was secured in part by a Morgan Stanley brokerage account maintained by Case. As part of the securitization agreement, Morgan Stanley was prohibited from allowing Case to trade in the account without written authorization from City National. City National claims that Morgan Stanley allowed unauthorized transactions, and, as a result, when the account was liquidated the value of the assets was $98,204.21 less than the amount required to pay Case's obligation on the loan. Plaintiff moves for summary judgment. For the reasons set forth below, the motion is denied.

Background

The following facts are undisputed.[1] In April 2003, City National made a loan of $925,000 to Case, a company controlled by third-party defendant David S. Solomon. On or about April 22, 2003, Case executed, among other things, a promissory note, an indemnification agreement, and a commercial pledge and security agreement. The pledge agreement designated certain Case accounts as collateral for the loan (the "pledged accounts"). Among these was brokerage account number 614-018389 (the "brokerage account"), maintained by Case through defendant Morgan Stanley.

On July 30, 2003, City National, Case, and Morgan Stanley signed agreements pertaining to each of the pledged accounts. The stated purpose of the brokerage account agreement (the

---

[1] The third-party defendants have not filed any papers in this matter. Therefore, their position with respect to the facts described herein is unknown.

material terms of which appear to be identical to those of the agreements regarding the other pledged accounts) is to "perfect the Creditor's security interest in the Pledged Account by granting Creditor control over the account."[2] Section 1 of the agreement instructs Morgan Stanley to:

> (i) establish the Pledged Account, which shall be a cash security account which is to be known as "[Creditor Name] f/b/o [Borrower Name]."
>
> (ii) transfer the assets listed in Exhibit A attached hereto and made a part hereof into the Pledged Account.

Section 2 states that:

> Once Morgan Stanley performs the transfer to the Pledged Account, Borrower will not have any control over the Pledged Account. <u>Borrower will not have the authority to trade in the Pledged Account unless Creditor authorizes such trading through Morgan Stanley's Trading Authorization form</u>. Creditor may revoke the authorization at any time by delivery of (i) written notice to Morgan Stanley or (ii) delivery of a Notice of Exclusive Control as set forth in provision 4.

(Emphasis supplied.)

Section 3 requires the Creditor to notify Morgan Stanley in writing if there is "a suspected error on the monthly statement or trade confirmation." If no such notification is received within 10 days, "Morgan Stanley may presume the statement correct."

Section 7(a) acknowledges and limits Morgan Stanley's liability, stating in relevant part:

> <u>Except for permitting a transfer of assets from the Pledged Account in violation of section 2, Morgan</u>

---

[2] In the agreements, City National is referred to as the "Creditor" and Case as the "Borrower."

> Stanley will not be liable to Creditor for complying
> with instructions from Borrower, in compliance with an
> executed Trading Authorization form, if the
> instructions are received by Morgan Stanley before
> Morgan Stanley receives a Notice of Exclusive Control
> in accordance with section 4.

(Emphasis supplied.) Finally, in section 10, the parties agree that any dispute arising out of the agreement will be adjudicated by New York State or Federal courts applying the law of the forum.

City National never submitted written authorization allowing Case to withdraw money from or make trades in the brokerage account. Nonetheless, between December 2003 and July 2004,[3] 43 wire transfers were made from the brokerage account to another account maintained by Case. City National did not contest any of these transfers. In August 2004, six withdrawals totaling $141,000 were made from the brokerage account. In September 2004, an additional $79,700 was transferred from the account.

After the August and September withdrawals, the value of the pledged accounts was below City National's margin requirements for the loan. On September 23, 2004, Barbara Ward, Vice President of City National, notified Morgan Stanley by letter that the August and September transfers were unauthorized and requested that Morgan Stanley replace the funds. On September 24, Edward Larkin, the executive director of Morgan Stanley's legal department, wrote Ward a letter declining to replace the

---

[3] City National's loan to Case was initially scheduled to mature on April 18, 2004. Prior to that date, however, Case requested a one-year renewal, and the maturity date was extended to April 17, 2005.

money. Then, at City National's request, Morgan Stanley liquidated the remaining collateral in the pledged accounts and transferred the proceeds to City National. The amount plaintiff received was $98,204.21 less than the amount owed by Case on the loan.

On March 10, 2005, City National filed a complaint against Morgan Stanley for breach of contract, alleging that Morgan Stanley allowed Case "to make a series of withdrawals from the Pledged Accounts without the required authorization." City National seeks to recover its $98,204.21 loss, plus interest, costs, and attorney's fees. On November 17, 2005, City National filed a motion for summary judgment. Morgan Stanley opposes this motion. For the reasons set forth below, summary judgment is denied.

Discussion

Summary judgment is appropriate only if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 465 (2d Cir. 2000). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment should only be granted when "no reasonable trier of fact could find in favor

of the non-moving party."  James v. New York Racing Ass'n, 233
F.3d 149, 152 (2d Cir. 2000)(citation omitted).  When the moving
party has asserted facts showing that the non-movant's claims
cannot be sustained, the opposing party must "set forth specific
facts showing that there is a genuine issue for trial," and
cannot rest on "mere allegations or denials" of the movant's
pleadings.  Rule 56(e), Fed. R. Civ. P.; accord Burt Rigid Box,
Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 91 (2d Cir.
2002).

Defendant concedes that the "funds could not be withdrawn
from the Account except at [City National's] direction."
Nonetheless, Morgan Stanley argues that there are three questions
of material fact that preclude summary judgment: (1) whether
certain conditions precedent to the establishment of City
National's right to control the account were fulfilled; (2)
whether City National waived its right to exercise exclusive
control over the brokerage account; and (3) whether City National
timely objected to the August and September transfers.

## A. Conditions Precedent

A condition precedent is "an act or event, other than a
lapse of time, which, unless the condition is excused, must occur
before a duty to perform a promise in the agreement arises."
Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co., 86
N.Y.2d 685, 690 (1995)(citation omitted).  Because an unrealized
condition precedent has the effect of nullifying a part of the

contract, New York courts will not construe a contractual obligation as a condition precedent "absent clear language showing that the parties intended to make it a condition." Rekemeyer v. State Farm Mut. Auto. Ins. Co., 4 N.Y.3d 468, 475 (2005)(citation omitted).  In addition, "it is a well-settled" rule in New York "that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself." A.H.A. Gen. Constr. v. New York City Housing Auth., 92 N.Y.2d 20, 31 (1998)(citation omitted).

Here, Morgan Stanley argues that the agreement established two conditions precedent to City National's exclusive control of the brokerage account.  First, it claims that the mandate in section 1 that Morgan Stanley "establish the Pledge Account, ... which is to be known as '[Creditor Name] f/b/o [Borrower Name]'" means that the proper naming of the account is a condition precedent to the other contractual obligations.  Second, it contends that the following language in section 2 makes the transfer of assets to a pledge account a condition precedent to plaintiff's exclusive control: "Once Morgan Stanley performs the transfer to the Pledged Account, Borrower will not have any control over the Pledged Account."  Morgan Stanley argues that the brokerage account was opened under the name "Case Investments LLC" prior to execution of the agreement and was never properly renamed "City National Bank of Florida f/b/o Case Investments LLC."  It also argues that the assets to which section 2 refers were already in the account when the agreement was executed;

therefore, Morgan Stanley never performed the required "transfer." Defendant claims that because these two conditions precedent were not met, City National never obtained the right to exclusive control of the brokerage account.

These contentions are frivolous. As noted above, courts do not deem contractual obligations to be conditions precedent unless the clear language of the contract demonstrates that this was the parties' intent. Rekemeyer, 4 N.Y.3d at 475. No part of section 1 could be read in good faith to suggest that the renaming of the brokerage account was intended to be a condition precedent to the performance of the rest of the contract. It is simply a contractual term. Moreover, the brokerage account is identified elsewhere in the agreement by number, and there is no suggestion that plaintiff, defendant, or any third party was confused about which account was covered by the contract. Finally, even if the establishment of the proper account name were a condition precedent, section 1 explicitly delegates responsibility for it to defendant. Morgan Stanley cannot hope to escape liability for its alleged breach of the contract on the ground that Morgan Stanley itself caused a condition precedent to remain unrealized. See A.H.A. Gen. Constr., 92 N.Y.2d at 31.

Defendant's contention regarding the transfer of assets is equally lacking in merit. Although section 2 arguably creates a condition precedent to City National's control of the brokerage account, the condition is not the one described by Morgan Stanley. Section 2 provides that Case will no longer control the

8

brokerage account "[o]nce Morgan Stanley performs the transfer" of designated assets into the account. "It is well settled that [a court's] role in interpreting a contract is to ascertain the intention of the parties at the time they entered into the contract." Evans v. Famous Music Corp., 1 N.Y.3d 452, 458 (2004). In order to credit Morgan Stanley's interpretation of section 2, then, the Court would have to find that the parties intended the agreement to take effect only if the assets were transferred after the contract was signed. In other words, Morgan Stanley's argument is that the parties were concerned about when the assets moved, rather than whether they ultimately became a part of the brokerage account. This defies logic.

It is undisputed that the parties intended to establish an account containing certain assets to be used as collateral for a loan. There is no suggestion that the mechanics of how and when the designated assets entered the brokerage account had any bearing on any party's interests. (Indeed, Morgan Stanley does not even attempt to explain what interest any party would have had in making the agreement contingent upon the assets moving after the contract was signed.) The clear meaning of section 2, then, is that Case would cede control as soon as the brokerage account contained the designated assets. Because this condition was realized when the agreement was signed, City National was entitled to exclusive control of the brokerage account beginning on July 30, 2003.

## B. Waiver

Waiver occurs when a party to a contract "intentional[ly] relinquish[es] ... a known right." Gilbert Frank Corp. v. Fed. Ins. Co., 70 N.Y.2d 966, 968 (1988). Once this occurs, the waiving party can no longer insist on strict performance of the relevant contractual duties. 13 Williston on Contracts § 39:27 (4th ed. 2000). Waiver may be made by express declaration or may be inferred from a party's actions. Because the effect of waiver is to eliminate otherwise valid contractual provisions, however, it is not "lightly presumed." Gilbert Frank, 70 N.Y.2d at 968. "Intent to waive will not be inferred from doubtful or equivocal acts or language; rather, in the absence of an express declaration . . ., there must be a clear, unequivocal, and decisive act of the party who is claimed to have waived its rights that no other reasonable explanation is possible." 13 Williston at § 39:28; accord Lamborn v. Dittmer, 873 F.2d 522, 529 (2d Cir. 1989).

Here, Morgan Stanley argues that City National's failure to object to the 43 wire transfers from the brokerage account between December 2003 and July 2004 creates a triable issue of fact regarding plaintiff's intent to waive its control of the account. It does not. The agreement does not <u>allow</u> Morgan Stanley to permit Case to execute trades in the account unless City National <u>objects</u>; rather, it <u>prohibits</u> Morgan Stanley from permitting such trades unless City National <u>authorizes</u> them. In the absence of such authorization (which the parties agree did

10

not occur here), City National is not required to object to illicit transactions in order to exercise its right of control.[4] Therefore, its "failure" to do so is not the sort of "evidence from which a clear manifestation of intent" to waive could be inferred. Gilbert Frank, 70 N.Y.2d at 968.

Morgan Stanley argues that, because waiver turns on the determination of a party's intent, it is an issue that must be left to the finder of fact. While intent is often an issue that cannot be decided at the summary judgment stage, this is not always the case. Indeed, defendant itself notes that questions of fact regarding a party's intent arise only when "the established facts permit reasonable minds to differ as to the inferences or effects from them." Champion Spark Plug Co. v. Automobile Sundries Co., 273 F. 74, 79 (2d Cir. 1921). As discussed above, the uncontested facts here would not allow a reasonable fact-finder to determine that City National clearly and unequivocally waived its right to control the brokerage account. Morgan Stanley's "mere allegation[]" to the contrary cannot defeat summary judgment. Rule 56(e), Fed. R. Civ. P.

---

[4] City National claims that its credit monitoring department only reviewed the summary page of each statement from the brokerage account to determine whether the account met the agreed upon margin requirements. According to an affidavit submitted by City National's senior vice president Allen Merkur, once the margin requirements were violated in September 2004, the company reviewed in detail the prior account activity and discovered "that the earlier fluctuations in the value of the [account] related in part to unauthorized withdrawal of funds, rather than merely a decline in the market value of the assets."

11

## C. Timely Objection

Morgan Stanley contends that under section 3 of the agreement, City National was required to object to any unauthorized transfers within 10 days of receiving the statement on which the transactions were reflected. Because City National does not provide evidence of the date on which it received the statement(s) showing the August and September 2004 transfers, defendant argues, there is an issue of material fact as to whether City National's September 23 letter was timely. In support of its contention, Morgan Stanley points to <u>Modern Settings, Inc. v. Prudential-Bache Sec., Inc.</u>, 936 F.2d 640 (2d Cir. 1991), in which the Second Circuit enforced an agreement between a brokerage firm and a customer that deemed account statements "conclusive" if the customer did not object in writing within 10 days of the transmittal. The Court found that the brokerage firm could not be held liable for unauthorized trades because the customer failed to comply with the 10-day rule. <u>Id.</u> at 645-46.

In <u>Modern Settings</u>, the Second Circuit pointed to two prudential reasons for enforcement of the 10-day rule: (1) "to require the customer to memorialize his or her complaint soon after receipt of the account statement rather than waiting to see if the trade is profitable," and (2) to "insure[] that unauthorized trading disputes are not relegated to 'swearing contests' between broker and customer." <u>Id.</u> The Circuit noted that it was "[f]or these reasons" that such agreements "generally

have been enforced by the courts." Id. at 646. Neither of these reasons, however, is controlling here. The transfers at issue were not trades, but bare withdrawals from the account; there is no risk, much less a concrete allegation, that City National was waiting to see if it could profit from these transactions before deciding whether to object. Furthermore, because neither party claims that City National explicitly authorized the August and September 2004 transfers, the dispute does not pit plaintiff's word against defendant's.

Nonetheless, Morgan Stanley has raised a material question regarding the meaning of section 3 and its applicability to the facts of this case. "Under New York law, the initial interpretation of a contract is a matter of law for the court to decide." VKK Corp. v. National Football League, 244 F.3d 114, 129 (2d Cir. 2001)(citation omitted). However, "[w]here there are alternative, reasonable constructions of a contract, i.e., the contract is ambiguous, the issue should be submitted to the trier of fact." K. Bell & Assoc., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)(citation omitted). Here, Morgan Stanley claims that section 3 obligated City National to object within 10 days to the authorized withdrawals; in the absence of such objections, Morgan Stanley claims, it incurred no liability for City National's losses.

City National argues that the unauthorized withdrawals were not "errors" at all, but rather breaches of contract, and therefore did not fall within the ambit of section 3. The

13

contract does not define the term "error," and the parties have not addressed what they intended the word to encompass. Of course, if City National had reviewed the account statements upon receipt, the withdrawals would have appeared to be errors under any definition of the term, since City National knew that it had not authorized the withdrawals.

Because the Court cannot determine the meaning of section 3 at the summary judgment stage, and because a trier of fact could reasonably find that section 3 required City National to object to the withdrawals within 10 days of receiving notice thereof, and in the absence of evidence indicating when City National learned of the last withdrawals, it has not demonstrated that it is entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is denied.

SO ORDERED:

Dated: New York, New York
June 27, 2006

_____
DENISE COTE
United States District Judge