```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - :
                                               :
CITY NATIONAL BANK OF FLORIDA,                 : 05 Civ. 2739 (DLC) (JCF)
                                               :
                    Plaintiff,                 :     REPORT AND
                                               :     RECOMMENDATION
     - against -                               :
                                               :
MORGAN STANLEY DW, INC.,                       :
                                               :
                    Defendant/Third            :
                    Party Plaintiff,           :
                                               :
     - against -                               :
                                               :
CASE INVESTMENTS, LLC and DAVID S.             :
SOLOMON,                                       :
                                               :
                    Third Party                :
                    Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - :
```
TO THE HONORABLE DENISE L. COTE, U.S.D.J.:

This is a third-party action commenced by Morgan Stanley DW, Inc. ("MSDW") seeking indemnification and contribution from third-party defendants, Case Investments, LLC ("Case") and David Solomon ("Mr. Solomon"). The principal claim, on which this third-party claim is based, was brought by City National Bank of Florida ("CNB") against MSDW asserting breach of contract. CNB claimed that MSDW allowed third-party defendant Case to make unauthorized withdrawals from MSDW accounts it had pledged as security on a loan made by CNB, in violation of a contract between MSDW and CNB. These withdrawals by Case resulted in a short-fall in the repayment of the loan. CNB sought to obtain the amount of this short-fall from MSDW. Ultimately, CNB and MSDW settled the principle action,

1

and CNB agreed to dismiss its claims against MSDW.

In this action, the plaintiff MSDW seeks damages from the third-party defendant Case arising from the settlement payment it made to CNB. MSDW also seeks to hold Mr. Solomon individually liable. After Case and Mr. Solomon failed to file an answer to the third-party complaint, a default judgment was entered against them. The third-party action was referred to me for an inquest on damages, which was held on January 16, 2007. Despite being afforded notice of the hearing, the third-party defendants did not appear. The following findings are therefore based on the evidence presented at the hearing and on the information submitted by the third-party plaintiff.

Background

Case is a Delaware Limited Liability Company and is located in New York. (Third-Party Complaint ("Compl."), ¶¶ 3-4). According to the complaint, David S. Solomon is the managing member of Case and its alter ego. (Compl., ¶ 5). MSDW is a Delaware corporation with its principal place of business in New York, and CNB is a national banking corporation with its principal place of business in Florida. (Compl., ¶¶ 1-2).

In April 2003, CNB made a loan to Case for $925,000.00. (Affidavit of Allen Merkur dated November 14, 2005 ("Merkur Aff."), attached as Exh. 1 to Declaration of Matthew C. Plant dated November 14, 2006 ("Plant Decl."), ¶ 2). Around this same time,

2

Case executed a Commercial Pledge and Security Agreement that pledged MSDW Account No. 614-018389 ("the pledged account") to CNB as collateral for the loan. (Plant Decl., ¶ 4). Prior to the maturity date of the loan, CNB and Case agreed to renew the loan, and, as additional security, Case pledged other MSDW accounts to CNB and continued the pledge on the pledged account. (Plant Decl., ¶¶ 5-7). Subsequently, Case, CNB, and MSDW collectively executed Morgan Stanley Pledged Account Control Agreements ("MSDW control agreements") for all the pledged accounts, which provided that Case would "not have authority to trade in the Pledged Account" unless CNB gave its authorization. (Plant Decl., ¶ 8; MSDW control agreements, attached as part of Exh. 1 to Plant Decl., § 2(a)).

Between December 2003 and September 2005, Case made approximately 43 wire transfers from the pledged accounts without CNB authorization. (Plant Decl., ¶ 9). Once CNB discovered the transfers, it demanded that MSDW replace the funds that Case had withdrawn. (Plant Decl., ¶ 12). Pursuant to CNB's request, MSDW liquidated the remaining collateral in the pledged accounts and wired the proceeds to CNB. These proceeds were insufficient to repay the loan and a balance of $98,204.21 remained due from Case. (Plant Decl., ¶ 13).

CNB originally filed a complaint directly against the third-party defendants in Florida, but because it was unable to effect service on either defendant, CNB filed an action for breach of

contract against MSDW in this Court on March 10, 2005. (Plant Decl., ¶¶ 13-15). CNB sought damages for the outstanding loan balance of $98,204.21, plus interest and attorneys' fees. (Plant Decl., ¶ 15). On April 28, 2005, MSDW filed the present third-party complaint and served it on the third-party defendants, along with a copy of the plaintiff's complaint. (Plaint Decl., ¶ 16). On July 18, 2006, when the third-party defendants failed to answer, the Honorable Denise L. Cote, U.S.D.J., entered a default judgment and referred the case to me for an inquest on damages. CNB and MSDW then entered into a settlement by which CNB agreed to dismiss its claims against MSDW in consideration of $87,500.00, and assigned to MSDW $87,500.00 of the debt that Case owed to CNB. (Plant Decl., ¶ 21).

Discussion

    A.  Jurisdiction

This Court had diversity jurisdiction over the main action pursuant to 28 U.S.C. § 1332, and supplemental jurisdiction over the third-party complaint pursuant to 28 U.S.C. § 1337. The Court continues to have discretionary authority to exercise supplemental jurisdiction over the remaining third-party complaint pursuant to 28 U.S.C. § 1367(a). In general, "district courts [should] deal with cases involving pendant claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendant jurisdiction doctrine." See City of Chicago

4

v. International College of Surgeons, 522 U.S. 156, 172-73 (1997)(alterations in the original)(internal quotations and citations omitted). In this case, these interests are best served by continuing to exercise jurisdiction over MSDW's third-party claim.

    B.  Choice of Law

The MSDW control agreements signed by Case and CNB each contain a provision that calls for the application of New York law. (MSDW control agreements, § 10); see LaSalle Bank National Association v. Nomura Asset Capital Corp., 424 F.3d 195, 205 n.7 (2d Cir. 2005)("'New York law gives full effect to parties' choice-of-law provisions'")(quoting Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996). Thus, New York law applies to the indemnification clause.

    C.  Liability

        1.  Case Investments

Under New York law, "[w]hen one of two or more joint tortfeasors obtains a release (i.e., settles with the plaintiff), he may neither be held liable for contribution to nor may he seek contribution from the other joint tortfeasors." Matter of Poling Transportation Corp., 784 F. Supp. 1045, 1047 (S.D.N.Y. 1992)(citing New York General Obligations Law ("GOL") § 15-108). However, GOL § 15-108 does not bar indemnification claims brought by settling tortfeasors. Id.; see also Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 853 (1985). In

indemnification, "the party held legally liable shifts the entire loss to another 'to prevent a result which is regarded as unjust or unsatisfactory.'"  Id. (quoting Mas v. Two Bridges Associates, 75 N.Y.2d 680, 689-90, 555 N.Y.S.2d 669, 674 (1990)).  A written contract that provides for indemnification will be enforced as long as the intent to assume such a role is "sufficiently clear and unambiguous."  Rodrigues v. N & S Building Contractors, Inc., 5 N.Y.3d 427, 433, 805 N.Y.S.2d 299, 302 (2005).

MSDW may no longer seek contribution from Case because it has settled the primary claim with CNB.  With regard to indemnification, every MSDW control agreement signed by Case and CNB contained the following "Liability and Indemnification" clause:

> (b) Borrower and Creditor hereby agree to indemnify and hold harmless Morgan Stanley, its officers, directors, employees and agents, and any Investment Manager or Agent named in accordance with the procedures in section 2, against all claims, causes of action, liabilities, lawsuits, demands, expenses, and or damages including, without limitation, any and all court costs and reasonable attorney's fees, in any way related to or arising out of or in connection with this Agreement, and instructions received from Creditor with respect to the Pledged Account except if such claims, liabilities or expenses are caused solely by Morgan Stanley's or such Investment Manager's or Agent's gross negligence or willful misconduct.

(MSDW control agreements, § 7).  Here, Case, as "Borrower," clearly agreed to indemnify MSDW against "all claims . . . in connection with this Agreement."  Since the control agreements are elements of the collateral on the initial loan between CNB and Case, the language of the indemnification agreement applies.  Consequently,

Case is liable to MSDW for indemnification.

    2.  <u>David S. Solomon</u>

By contrast, as Mr. Solomon was not a party to the agreements made between Case, CNB, and MSDW, he may only be held individually liable for breach if the facts alleged in the complaint support piercing the corporate veil.  See <u>Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.</u>, 782 F.2d 329, 342-43 (2d Cir. 1986) (affirming district court's decision to enter a default judgement and pierce the corporate veil simultaneously).  Under New York Law, courts will disregard the corporate structure in order "to prevent fraud or to achieve equity."  <u>Walkovsy v. Carlton</u>, 18 N.Y.2d 414, 416, 276 N.Y.S.2d 585, 587 (1966) (quoting <u>International Aircraft Trading Co. v. Manufacturers Trust Co.</u>, 297 N.Y. 285, 292 (1948)). Evidence of "complete domination of the corporation is the key to piercing the corporate veil, . . . [but] such domination standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required."  <u>Morris v. New York State Department of Taxation & Finance</u>, 82 N.Y.2d 135, 141-42, 603 N.Y.S.2d 807, 811 (1993); <u>American Fuel Corp. v. Utah Energy Development Co.</u>, 122 F.3d 130, 134 (2d Cir. 1997).

> Because New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . ., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.

Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979)(alterations in the original)(citations omitted).

In order to properly plead an alter ego theory, a plaintiff must demonstrate "(1) that the parent exercised such complete domination in respect to the transaction attacked that the subsidiary had at that time no separate will of its own, and (2) that this domination was used to commit fraud or wrong against plaintiff." Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 122 (S.D.N.Y. 1996) (quoting Zinaman v. USTS New York, Inc., 798 F. Supp. 128, 132 (S.D.N.Y. 1992). The trier of fact must look at the totality of the evidence to decide if the presumption of corporate independence is outweighed by the policy to protect those who conduct business with the corporation. Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991). To this end, the trier of fact is entitled to examine factors such as:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, [and] (6) the amount of business discretion displayed by the allegedly dominated corporation[.]

Id. "[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the

8

liberal notice pleading standard." In re Currency Conversion Fee Antitrust Litigation, 265 F. Supp. 2d 285, 426 (S.D.N.Y. 2003).

Following a default, all factual allegations of the complaint, except those relating to damages, must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Time Warner Cable of New York City v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998). In its complaint, MSDW makes a general assertion, "on information and belief," that Mr. Solomon is the "alter ego" of Case. (Compl., ¶ 5). MSDW also states that Mr. Solomon was the exclusive signatory for Case, and that all MSDW correspondence relating to Case's accounts was sent in care of Mr. Solomon, as they shared common addresses. (Compl., ¶¶ 10-12). Given the numerous factors that must be taken into account when conducting the alter ego analysis, MSDW's general assertion, together with the evidence of a few shared characteristics between Mr. Solomon and Chase, is not enough to establish that Mr. Solomon is an alter ego of the company. MSDW has not presented adequate allegations to pierce the corporate veil and find Mr. Solomon individually liable.

E. Damages

When determining the damages to be awarded, the court must have a "sufficient basis from which to evaluate the fairness of the proposed sum." Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989). Here, MSDW seeks the default amount of $87,500.00 plus attorney's fees and costs. It has presented proof

that it paid $87,500.00 to CNB to settle the initial claim. (Exh. E (General Release and Settlement Agreement between CNB and MSDW); Exh. F (copy of MSDW check made payable to CNB in the amount of $87,500.00), submitted into evidence at the inquest). The default amount sought is $10,204.00 less than the $98,204.21 sought by CNB in its initial claim, which was the amount owed by Case on the loan. (Merkur Aff., ¶¶ 1, 19-20).

Based on the evidence, the proposed default amount is fair and reasonable, and MSDW is entitled to a damage award of $87,500.00.

F. <u>Attorneys' Fees</u>

Because Case and CNB explicitly contracted to indemnify MSDW against "reasonable attorney's fees . . . arising out of or in connection with this Agreement" (MSDW Control agreements ¶ 7(b)), attorneys' fees are recoverable in this case. See <u>Kaleidoscope Media Group, Inc. v. Entertainment Solutions, Inc.</u>, 97 Civ. 9369, 2001 WL 849532, at *4 (S.D.N.Y. July 19, 2001)(holding attorneys' fees recoverable on default judgment because the parties had previously contracted that these fees would be recoverable in the event of a breach of contract). Upon finding that attorneys' fees are recoverable, an appropriate award is "based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." <u>Reiter v. MTA New York City Transit Authority</u>, 457 F.3d 224, 232 (2d Cir. 2006).

Here, MSDW seeks a total of $11,523.85 in attorneys' fees.

10

(Exh. F (Declaration of David G. Smitham dated January 19, 2007 ("Smitham Decl."), ¶ 12; Exh. G (attorney time records and invoices), submitted into evidence at the inquest)); see also New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983)(contemporaneous time records required in application for statutory attorneys' fees).  MSDW's counsel have submitted time records indicating that they conducted the following amount of work attributable to settlement discussions with Mr. Solomon:  14.5 hours by an attorney at the rate of $190.00 per hour, and 9.6 hours by another attorney at $178.00 per hour, for a total of $4,017.40.  (Smitham Decl., ¶ 10).  MSDW's counsel submitted additional time records indicating that they conducted the following amount of work attributable to the preparation of the motion for default judgment, the proposed findings, and the documentation for and attendance at the inquest hearing:  7.3 hours by an attorney at the rate of $190.00 per hour, 5.8 hours by another attorney at the rate of $295.00 per hour, and 23.3 hours by another attorney at the rate of $225.00 per hour, for a total of $7,506.45.  (Smitham Decl., ¶ 10).

Here, all requests were fully documented with contemporaneous time records.  The time expended was reasonable, and the rates requested are commensurate with those generally charged for similar work in this district.  Therefore, the request for fees should be granted in the amount of $11,523.85.

11

G. <u>Interest</u>

Pursuant to 28 U.S.C. § 1961(a), interest will be allowed "on any money judgement in a civil case recovered in a district court." Such interest is calculated from the date of judgement "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment"; furthermore, the interest will be compounded annually. 28 U.S.C. § 1961(a) and (b). Accordingly, MSDW should be awarded post-judgement interest at the statutorily-mandated rate.

<u>Conclusion</u>

For the reasons set forth above, I recommend that judgment be entered in favor of MSDW and against Case in the amount of $87,500.00 in damages and $11,523.85 in attorneys' fees, for a total of $99,023.85, plus post-judgement interest. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Denise L. Cote, Room 1040, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*/s/ James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         March 29, 2007

Copies mailed this date to:

Matthew C. Plant, Esq.
Bressler, Amery & Ross, P.C.
17 State Street
New York, New York 10004

David Solomon
563 Park Avenue
Apt. 3
New York, New York 10021-7314

Case Investments LLC
Attn: David Solomon
c/o Panock Consulting LLC
330 Madison Avenue - 29th Floor
New York, New York 10017-5001

Case Investments LLC
Attn: David Solomon
c/o Howard Krant
563 Park Avenue - Apt. 3
New York, New York 10021-7314